IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CV-109-FL

| | |
|---|---|
| HELEN C. CASHWELL Trustee, BRAD R. JOHNSON, ELCI WIJAYANINGSIH, and RUSSELL W. KINCAIDE, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| TOWN OF OAK ISLAND, NORTH CAROLINA; DAVID KELLY in his individual capacity; DAVID HATTEN in his individual capacity; KATIE COLEMAN in her individual capacity, | ) ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

This matter is before the court on defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (DE 22). Also before the court is defendants' motion to strike a portion of plaintiffs' response in opposition to the motion to dismiss (DE 36). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendants' motion to dismiss is granted for reasons of comity, and defendants' motion to strike is denied as moot.

**STATEMENT OF THE CASE**

This case concerns the constitutionality of a municipality collecting revenue from undeveloped property owners within a sewer treatment district authorized by state law. Plaintiffs, proceeding pro se, commenced this action on June 20, 2018, alleging violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution. In their complaint,

plaintiffs seek compensatory and punitive damages, as well as declaratory and injunctive relief. Defendants filed the instant motion to dismiss on October 19, 2018, asserting this action is barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, as well as principles of comity.

Plaintiffs initially responded in opposition only to defendants' jurisdictional arguments, and moved to stay briefing on defendants' 12(b)(6) motion. The court denied plaintiffs' motion, but allowed plaintiffs leave to respond to the remaining part of defendants' motion. Plaintiffs followed with a supplemental brief totaling 61 pages, together with a "memorandum of clearly established law" presenting another 49 pages of legal arguments. Defendants moved to strike the filing in opposition for exceeding the page limit for memoranda allowed by Local Civil Rule 7.1(f).

## STATEMENT OF FACTS

The facts in the complaint[1] may be summarized as follows. Plaintiffs are local undeveloped property owners within the jurisdiction of defendant Town of Oak Island ("Town"). (See Compl. ¶¶ 2–6).[2] In 2006, the North Carolina General Assembly granted defendant Town authority to create a fee-supported sewer treatment district. (Id. ¶ 14); Act of July 13, 2004, S.L. 2004-96, 2004 N.C. Sess. Laws 117 (allowing the Town of Holden Beach to impose a sewer treatment district charge); Act of June 30, 2006, S.L. 2006-54, 2006 N.C. Sess. Laws 85 (authorizing defendant Town to impose a sewer treatment charge on the same terms as the Town of Holden Beach).[3] The enabling

---

[1] Hereinafter, all references to the "complaint" in the text and to "Compl." in citations are to plaintiffs' first amended complaint filed October 13, 2018, (DE 11), unless otherwise specified. The court considers exhibits attached to the complaint as part of plaintiffs' pleading. See Fed. R. Civ. P. 10(c).

[2] Defendants David Kelly ("Kelly"), David Hatten ("Hatten"), and Katie Coleman ("Coleman") are town officials responsible for executing defendant Town's policies, and are each sued in their individual capacities. (See Compl. ¶¶ 7–9).

[3] Where the laws passed by the North Carolina General Assembly are a matter of public record, the court takes judicial notice of Session Laws 2004-96 and 2006-54. See Fed. R. Evid. 201; Papasan v. Allain, 478 U.S. 265, 269 n.1 (1986).

law allows defendant Town to "impose annual fees for the availability of sewer service within the district" ("charge"), which are to be "on the property tax bill for each parcel of property lying within the municipal limits on which the fee is imposed." 2004 N.C. Sess. Laws at 117; 2006 N.C. Sess. Laws at 85. The charge may not exceed the cost of providing sewer services, and "shall be imposed on owners of each dwelling unit or parcel of property that could or does benefit from the availability of sewage treatment." 2004 N.C. Sess. Laws at 117; 2006 N.C. Sess. Laws at 85. The charge is "to be used only to pay the debt service for the sewer system." 2004 N.C. Sess. Laws at 118; 2006 N.C. Sess. Laws at 85. The law further requires defendant Town to "administer the fund to provide for the payment of said sewer services provided by the county." 2004 N.C. Sess. Laws at 118; 2006 N.C. Sess. Laws at 85.

On June 25, 2009, defendant Town adopted a resolution establishing a sewer treatment district and levied a charge of $146.15 for property tax year 2009 upon all property owners. (Compl. ¶ 15). At the same time, defendant Town also approved a refund of the 2009 sewer treatment district charges to developed parcel owners, but not undeveloped parcel owners. (Id.). Following discussion and approval of the resolution, defendant Town's mayor made the following statement summarizing the rationale behind the measure:

> Let [me] make this clear for the people watching on TV. The annual fees imposed on parcels of property within the district in the amount of $146.15 per parcel-everybody's gonna get it. The collection fees will be applied to debt service for the Town Wastewater Project; a credit will be applied to users of the Town system. So if you're buying water now, you're buying any kind of utility now, you're gonna get a credit for the amount that we're billing. This is so the parcels of property that don't have anything on it can help pay their share which they're not doing now. So don't let anybody tell you that you're getting billed $146.15 and that's the way it is. You're gonna get a credit for it. So let's make that clear.

3

(Town Counsel Meeting (DE 11-2) at 4–6).[4] Thereafter, defendant Town proceeded to adopt similar annual resolutions. Each year from 2015 to 2017,[5] defendant Town approved annual sewer treatment district charges of $803.82, then credited that amount back to developed parcel owners but not undeveloped parcel owners. (Compl. ¶¶ 16–17; see 2016 Johnson Developed Property (DE 11-4) at 2; 2016 Johnson Undeveloped Property (DE 11-5) at 2).

The charges billed to plaintiffs were for the "availability of sewer treatment service within the district." (Compl. ¶ 20). Plaintiffs contend that sewer treatment service was not "available" to their undeveloped properties because, in order to access sewer service, defendant Town must approve a sewer hookup application and certain development fees must be paid to develop and establish a connection to the sewer system. (Id.; see Town Fee Schedule (DE 11-3) at 1–2). On September 18, 2017, plaintiff Brad Johnson ("Johnson") served a demand letter upon defendant Town, requesting individually and on behalf of those similarly situated a refund of charges paid by undeveloped property owners. (Compl. ¶ 21; Demand Letter (DE 11-6) at 2–3).

## COURT'S DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where, as here, a defendant

---

[4]  Unless otherwise stated, the page numbers cited are those assigned by the court's electronic case filing system (CM/ECF).

[5]  In the present litigation, plaintiffs solely allege constitutional violations arising from defendants' imposition of annual fees in 2015, 2016, and 2017.

4

raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

B.  Tax Injunction Act

Defendants first ask the court to dismiss plaintiffs' case under the TIA. "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "Like its federal counterpart, the Anti–Injunction Act, the TIA ensures that states are able to 'assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference.'" Gwozdz v. HealthPort Techs., LLC, 846 F.3d 738, 742 (4th Cir. 2017) (citing Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974)).

Plaintiffs represent that, for property tax year 2018, defendant Town approved annual sewer treatment charge of $601.78. (Resp. Opp. (DE 35) at 3). Plaintiffs also represent that all revenue from the charge will flow into the sewer district fee enterprise fund, and that no refunds in the form of credits will be issued to owners of developed parcels. (Resp. Opp. (DE 35) at 3). As a result of defendant Town's post-filing enactments, plaintiffs "withdraw" their "requested equitable relief." (Resp. Opp. (DE 35) at 4). The court construes plaintiffs' statements as an abandonment of their claims for declaratory and injunctive relief, and dismisses those claims without prejudice.[6]

Defendants argue that plaintiffs may not abandon their claims in their briefs. The court rejects defendants' argument. See Al-Deen v. Trustees of Univ. of N. Carolina, Wilmington, 102

---

[6] Where plaintiffs have chosen to withdraw their claims for equitable relief, the court does not address plaintiffs' legal contention that voluntary cessation of challenged conduct by defendants moots plaintiffs' equitable claims.

F. Supp. 3d 758, 768 (E.D.N.C. 2015). Where plaintiffs have no remaining claims for equitable relief, defendants' motion to dismiss under the TIA is denied as moot.

C.   Comity Doctrine

Defendants also seek dismissal of plaintiffs' claims under federal comity doctrine. "[T]he comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." Levin v. Commerce Energy, Inc., 560 U.S. 413, 417 (2010). Based on principles of federalism and comity, district courts refrain from exercising jurisdiction over suits posing either an equitable or legal challenge to state or local taxes if a plain, adequate, and complete remedy is available under state law. See Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 515 U.S. 582, 589 (1995); Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 116 (1981); Lawyer v. Hilton Head Pub. Serv. Dist. No. 1, 220 F.3d 298, 302 (4th Cir. 2000). North Carolina's procedures for challenging the constitutionality of taxes are a "plain, adequate, and complete remedy." DIRECTV, Inc. v. Tolson, 513 F.3d 119, 128 (4th Cir. 2008); see N.C. Gen. Stat. § 105-381. Moreover, the "remedies available by statute for the collection of taxes shall apply to the collection of the sewer district fees." 2004 N.C. Sess. Laws at 118; 2006 N.C. Sess. Laws at 85. Therefore, plaintiffs' claims challenging the constitutionality of the charges in this case are barred by comity doctrine if those charges are taxes.

"Because the principle of comity reflects the recognition that states should be free from federal interference in the administration of their fiscal operations, we interpret the term 'tax' broadly for purposes of our jurisdictional inquiry." DIRECTV, 513 F.3d at 125. "[T]he nomenclature provided to the charge at issue is not material as the inquiry focuses on explicit factual circumstances that transcend the literal meaning of the terminology." Valero Terrestrial Corp. v.

Caffrey, 205 F.3d 130, 134 (4th Cir. 2000) (citing Folio v. City of Clarksburg, 134 F.3d 1211, 1216–17 (4th Cir. 1998)).

"To determine whether a particular charge is a 'fee' or a 'tax,' the general inquiry is to assess whether the charge is for revenue raising purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee.'" Id.

> The "classic tax" is imposed by the legislature upon a large segment of society, and is spent to benefit the community at large. The "classic fee" is imposed by an administrative agency upon only those persons, or entities, subject to its regulation for regulatory purposes, or to raise "money placed in a special fund to defray the agency's regulation-related expenses."

DIRECTV, 513 F.3d at 125 (quoting Valero, 205 F.3d at 134 (internal citations omitted)). Accordingly, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") evaluates whether a charge is a tax or a fee based on three factors: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." Norfolk S. Ry. Co. v. City of Roanoke, 916 F.3d 315, 319 (4th Cir. 2019) (internal citation omitted). "If the charge falls 'somewhere in the middle' between a classic tax and a classic fee, the most important of these considerations is the charge's purpose." Id. (internal citation omitted).

Here, defendant Town's legislative body, as opposed to an administrative agency, imposes the annual charge. See 2004 N.C. Sess. Laws at 117; 2006 N.C. Sess. Laws at 85. This consideration weighs in favor of treating the sewer district treatment charge as a tax. Norfolk S. Ry., 916 F.3d at 319.

Turning to the second factor, "an assessment imposed upon a narrow class is less likely to be a tax than an assessment imposed upon a broad class of parties." GenOn Mid-Atl., LLC v.

7

Montgomery Cty., Md., 650 F.3d 1021, 1024 (4th Cir. 2011) (internal quotations omitted). Charges assessed to the population "based upon a resident's property owner status instead of his use of the city service" are treated as taxes. Folio, 134 F.3d at 1217 (citing United States v. City of Huntington, 999 F.2d 71, 73–74 (4th Cir. 1993)); see Norfolk S. Ry. Co., 916 F.3d at 319–20. Here, the law defines the population subject to the charge based upon property ownership. See 2004 N.C. Sess. Laws at 117; 2006 N.C. Sess. Laws at 85. While the charge expressly applies to any person who "does benefit" from the service, it also extends to any person who "could . . . benefit" from the service. 2004 N.C. Sess. Laws at 117; 2006 N.C. Sess. Laws at 85. Including property owners that may never actually use the sewer system makes population subject to the charge more akin to the property owning public subject to taxes, rather than a discrete group of individuals subject to regulation. See GenOn, 650 F.3d at 1024; Lawyer, 220 F.3d at 303–04; Folio, 134 F.3d at 1217.

The final and most important factor for determining the nature of the charge is its purpose. "[A] charge is more likely to be a tax if its primary purpose is to raise revenue for general government activity that benefits the entire community." Norfolk S. Ry., 916 F.3d at 320. "Conversely, a charge is more likely to be a fee if it's used to provide individualized benefits or to defray an agency's costs of regulating." Id. "[T]he fact that revenue is placed in a special fund is not enough reason on its own to warrant characterizing a charge as a 'fee.'"[7] Valero, 205 F.3d at 135. (4th Cir. 2000). The law provides that sewer district fees are "to be used only to pay the debt service for the sewer system." 2004 N.C. Sess. Laws at 118; 2006 N.C. Sess. Laws at 85. The law also states that the fees are to be imposed "for the availability of sewer service" and "for the

---

[7] In this instance, the law does require that defendant Town place the revenue in a separate fund. See 2004 N.C. Sess. Laws at 118; 2006 N.C. Sess. Laws at 85. As noted, this fact alone does not bear on the purpose of the charge.

8

payment of said sewer services." 2004 N.C. Sess. Laws at 117–18; 2006 N.C. Sess. Laws at 85.

The Fourth Circuit has suggested that paying to service a municipality's debt for a sewer system and making a sewer system generally available are benefits shared by the community. "Generally speaking, a special assessment imposed by a municipality qualifies as a tax." Folio, 134 F.3d at 1217 (concluding an assessment for the availability of fire protection services was a tax). In a case strikingly similar to the present action, residents in a public service district alleged equal protection and takings violations because they were charged the property taxes, availability fees, and developer contributions to support the district even though they did not receive water or sewer service. Lawyer, 220 F.3d at 300–01. There, the Fourth Circuit concluded without elaboration that such measures were taxes, and held comity required dismissal of the action. Id. at 301–04. Similarly, the Fourth Circuit adopted the opinion of the district court as its own in Club Ass'n v. Wise. 293 F.3d 723, 726 (4th Cir. 2002) (per curiam). In Club Ass'n, the court found uses including "the school building debt service fund" and the "the West Virginia infra-structure fund" to "provide[] revenue that ultimately will benefit most West Virginians." Club Ass'n of W. Virginia, Inc. v. Wise, 156 F. Supp. 2d 599, 613–14 (S.D.W. Va. 2001).

Recent developments in other circuits also demonstrate that revenue raising measures designed to service a political subdivision's debt benefit the entire community. In 2013, the City of Detroit founds itself unable to pay its debts, requiring it to declare Chapter 9 bankruptcy and drastically reorganize its finances. In re City of Detroit, 524 B.R. 147, 160 (Bankr. E.D. Mich. 2014) (confirming Detroit's reorganization). Detroit's financial difficulties caused its citizens numerous problems, including lack of basic government services such as provision of water. See, e.g., In re City of Detroit, Mich., 841 F.3d 684, 688 (6th Cir. 2016). To this day, the territory of

9

Puerto Rico experiences a crisis struggling to pay off its debtors. See, e.g., In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 121, 124–25 (1st Cir. 2019). Puerto Rico's insolvency prevents the territory from making payments for crucial services such as Medicaid. See, e.g., Municipality of San Juan v. Puerto Rico, 919 F.3d 565, 569 (1st Cir. 2019) (holding that automatic stay must be released before wraparound payments could be made).

Solvency is not a guarantee for state and local governments. Therefore, revenue raising measures for debt service, like the sewer district treatment charge in the present case, are fairly said to "sustain the essential flow of revenue to state (or local) government." Collins Holding Corp. v. Jasper Cty., S.C., 123 F.3d 797, 800 (4th Cir. 1997). Moreover, the underlying benefit defendant Town sought to pay for is the "availability of sewer service." 2004 N.C. Sess. Laws at 117–18; 2006 N.C. Sess. Laws at 85. Revenue raised for the "availability of sewer service" does not provide an individualized benefit, and is not meant to regulate or punish. Even plaintiffs' complaint intimates that the availability of a sewer system yields a benefit to the entire community. (See Compl. ¶ 12 (discussing the potential increase in land value generally accruing to local property owners with the presence of a sewer system)). Consequently, the uses prescribed by law for the sewer treatment district charge more closely resemble as tax than a fee. Applying the factors together, the court concludes for purposes of the comity doctrine that the charge is a tax, notwithstanding plaintiffs' several arguments the charge is a fee, which the court treats in turn.

Plaintiffs first argue that defendant Town's sewer treatment district charge is regulatory in nature because it is part of a "comprehensive statutory and regulatory scheme designed to provide sewer services to its customers." (Pl. Resp. (DE 28) at 28). In addressing plaintiffs' argument, the Fourth Circuit's recent decision in Norfolk S. Ry. is instructive. There, the Fourth Circuit held that

a charge imposed by defendant pursuant to a Virginia statute related to stormwater management was used for regulatory purposes. 916 F.3d at 322. First, the court observed "[t]his statute restricts funds to specific uses related to stormwater management, and it requires that the charge incentivize stormwater management practices by crediting property owners who adopt them." Id. (citing VA Code § 15.2-2114(D)). The court then noted that, because of the complex mandates of state and federal law involving stormwater, "[defendant] is now a participant in a comprehensive scheme regulating stormwater management and the assessment of charges to pay for it." Id. Finally, the court concluded that the that stormwater management charge was a fee because it "ensure[s] that owners of impervious surfaces bear the cost of managing stormwater runoff." Id. at 323.

Unlike Norfolk S. Ry., the statute in this case does not serve a regulatory or punitive purpose. The statute in the present lawsuit only allows fees to be used in a manner that makes sewer services generally available. See 2004 N.C. Sess. Laws at 118; 2006 N.C. Sess. Laws at 85. Additionally, the objectives of the statute are circumscribed. The law does not prescribe an exhaustive list of specific regulatory uses for funds,[8] together with credits to incentivize property owners to adopt certain desired practices involving the sewer system. See VA Code § 15.2-2114. The instant measure is not intended to shift costs to those placing the greatest burden on the sewer system. See 2004 N.C. Sess. Laws at 118; 2006 N.C. Sess. Laws at 85; Norfolk S. Ry., 916 F.3d at 323. In sum, plaintiffs' first argument that the sewer district treatment charge is regulatory fails in light of its general revenue raising purpose related to debt servicing and general availability of sewer services.

---

[8] The Virginia statute does list debt retirement as one potential use for the regulatory fee in that case. See VA Code § 15.2-2114(A)(3). However, it also lists several other uses classically associated with regulation, such as "[m]onitoring of stormwater control devices and ambient water quality monitoring" or "other activities consistent with the state or federal regulations or permits governing stormwater management, including, but not limited to, public education, watershed planning, inspection and enforcement activities, and pollution prevention planning and implementation." Id. § 15.2-2114(A)(5), (7).

11

Plaintiffs also argue that the sewer district treatment charge is not being used for the purposes designated by state law. (Pl. Resp. (DE 28) at 28–30). Plaintiffs' argument has no bearing on whether the uses designated by law for the sewer district treatment charge are consistent with that of a tax. The uses for the charge, which plaintiffs themselves contend was levied under the state law examined by this court, are consistent with a tax. Plaintiffs' argument merely underscores why federal courts require states provide a "plain, adequate, and complete remedy" for constitutional claims. See DIRECTV,, 513 F.3d at 128. Plaintiffs are entitled to assert their theory before the state courts that the sewer treatment district charge is "levied for an illegal purpose." See N.C. Gen. Stat. § 105-381(a)(1); 2004 N.C. Sess. Laws at 117–18; 2006 N.C. Sess. Laws at 85.

Plaintiffs contend that defendants improperly rely upon Folio because the reasoning of Folio was abrogated by Valero. The Valero court expressly cited Folio with approval in reaching its decision. See Valero, 205 F.3d at 134. Moreover, the test adopted by the Fourth Circuit in Valero is derived from factors articulated by the United States Court of Appeals for the First Circuit. See San Juan Cellular Telephone Co. v. Public Service Comm'n, 967 F.2d 683, 685 (1st Cir.1992). The Folio court cited to its previous decision in Collins, which in turn discussed San Juan Cellular with approval. See Folio, 134 F.3d at 1217; Collins, 123 F.3d at 800. Plaintiffs' contention that Folio was abrogated by Valero and subsequent cases is without merit.

Finally, plaintiffs assert that the issue of whether the sewer district treatment charge is a tax or a fee should be resolved after discovery. (Pl. Resp. (DE 28) at 25–26 (citing Cumberland Farms, Inc. v. Tax Assessor, State of Me., 116 F.3d 943, 946 (1st Cir. 1997)). "The problem with this approach is that it permits the very evil that the comity principle is intended to avoid: intrusive federal litigation that threatens to compromise state tax systems." DIRECTV, 513 F.3d at 126 n.2.

Where the court is able to reach its decision by reviewing plaintiffs' complaint on its face, the court concludes discovery is unnecessary.

In sum, the sewer district treatment charge ameliorates debt incurred by defendant Town to finance a sewer system that benefits a wide swath of local population, making it a tax. The principles of federalism and comity, which have long ensured that states and localities remain able to administer their own systems of taxation, require dismissal of the instant federal lawsuit. See Nat'l Private Truck Council, 515 U.S. at 589; Fair Assessment, 454 U.S. at 116. For these reasons, the court declines to exercise jurisdiction over plaintiffs' claims.

**CONCLUSION**

Based on the foregoing, defendants' motion to dismiss (DE 22) is GRANTED. Defendants' motion to strike plaintiffs' response in opposition (DE 36) is DENIED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 31st day of May, 2019.

LOUISE W. FLANAGAN
United States District Judge